We've allocated 20 minutes for this case. I think we've got less issues than some of the others we've had, and so you might as well get down just to the one issue that obviously is going to decide the case. Yes, Your Honor. Good morning. Kurt Hermanson on behalf of Julianne Wilson. There are five issues in this case, but I would like to just focus on two, the jury note issue and the aiding and abetting issue. I think that's the most important issue. I think the aiding and abetting, the jury note, is quite well briefed. Your Honor, in this case, it's structural error that we're dealing with. The court instructed the jury on aiding and abetting in a case where Julianne Wilson was the driver and sole occupant of the vehicle. Therefore she couldn't have been aiding and abetting anyone in bringing the aliens to the United States because the offense is the physical bringing of them to the United States. Now, I thought we had a case that says you don't have to have a physical bringing. I think there's a Ninth Circuit case to that effect. Well, the government We've had cases where they say, well, there was concerted action and you didn't have a physical crossing of the border with somebody, and the Ninth Circuit says, well, that's okay because you're basically involved in this action to bring the person to the U.S. Right. And there are cases where there's someone in the United States who induces them. For example, if someone in the United States buys a car and so they'll be brought to the border and induced to then get in that second car after, say, they cross a canal or something, then you're part of that bring-to offense, and you have aided and abetted it. But in this case, we don't have any such facts. The government's argument is that Felipe, her boyfriend in Mexico, is the aider and abetter or the principal, and he can be neither, although the case law does indicate that there can be extraterritorial jurisdiction in 1324 cases for actions such as inducing or if conspiracy is charged. That's not true for the bring-to offense. The bring-to offense does not have extraterritorial effect. Leave that aside. I think the real question is what's the scope of the bring? That seems to me to be the question we really need to discuss. Sorry, the scope of? Bring. Right. Well, in this case, the scope, there's only evidence in this case is that Julianne Wilson is the driver and sole occupant of a vehicle containing people in a compartment. And her testimony is that her boyfriend, Felipe, had, she had driven a car for him before, and material witnesses were found in that car in the trunk. So in this case, she, he asked her to drive a van across. She testified in this case and said she didn't know the people were in the compartment, and in fact, she looked in the van, searched it, and because there was no trunk, she believed him that there wasn't anyone in the van. So she then drove the van to the border, and she's the only one who had control over the vehicle. It seems like she clearly, that that's not the precise possible error in this case, because it seems that the evidence says, shows that she was the driver and she brought, regardless of how broadly you construe bring-to or narrowly you construe, she clearly brought to the United States these aliens. So she falls within that. Okay. So then the question is, can the government also charge her with being an aider and abettor when she's the one who brought them to, so she'd be the aider and abettor of herself? And that's what troubles me because of the ambiguity, I mean, maybe you could do it if you had a special verdict form where you had, did she bring, you know, did she aid and abett, and if so, who, so that you knew what the jury was really convicting her of? Isn't that the thrust of your argument? Exactly, Your Honor. It really doesn't matter, that's kind of, because she clearly brought. Correct. And the problem is the government could have and should have elected in this case to proceed only on principle, but they knew that the evidence was weak, and so they decided to, they wanted it both ways. And as you can, as the Court can see from the closing argument and the way the case was presented, that the government wanted it both ways. They wanted to argue that the person who was really culpable was Felipe, and that Felipe set this whole thing up, and that because she was homeless, you know, she would do whatever it took to make sure she didn't stay on the street, and so she drove this van for him. And because she knew that he had set her up before, she was on notice, and therefore So was that the advantage to indicting her for both to the government was so that they could bring in proof of knowledge? Is that the advantage? Because there has to be some advantage to the government that they perceived in order for them to have indicted her in both, so what is it? The advantage is that under Munoz, the law in the circuit is clear. The principle has to have the specific intent to gain financially. Okay. And to avoid that, and Munoz said, Munoz said this is, the government did elect in that case and proceeded only on the principle, they were going to proceed on principle and aiding and abetting, but they only proceeded on principle. And the court said, well, when you do that, you have to prove that the principle has the specific intent for financial gain. So to avoid Munoz, the government, and run around proving that she had that intent, they also charged her with aiding and abetting. And then they can muddy the waters. Say Felipe had the intent, and then you don't know what the jury's convicted her of. Exactly. Or if they satisfied their burden to prove all elements beyond a reasonable doubt. Exactly. And she still gets the three years. Right. That's exactly what happened in this case, is they watered down the burden of proof. And when the judge, and it's not just an indictment case, this is about the instruction. So the government decides to indict on, and charge her as a principle, and says she is the principle for failing to present. When she comes up to the port of entry, obviously, Felipe's not guilty of failing to present. She fails to present, and is the principle of that. But then they want her also to get the three year minimum mandatory. And so they bootstrap on Felipe's intent to financially gain. There's no proof at all that she was going to financially gain from it. The argument was that, well, she didn't want to be homeless, and he had put her up in a hotel. And so she would do whatever it took to not be homeless. So are you arguing for a role that the government can never charge both, against a single person, both bringing in, aiding and abetting? They can certainly charge both. It's just under the facts of this case where she's the only person involved in the bring to. For example, if there were a passenger, or other evidence of aiding and abetting, like in the cases where there's the passenger and the driver, or if she had indicated that she knew Felipe was an alien smuggler, and that she was helping him, then they could charge it that way. Well, what the government says is she did know that. She knew what he was up to. Right, she knew that, right, she knew that. So you're, I mean, I'm not saying one way or the other whether it's legitimate evidence, but that's certainly the inference they're arguing, is that she was not an innocent in this arrangement. And that's how we get into the problem of the extraterritorial jurisdiction, is that Felipe could not be an aider and abetter to the bring to offense. Because the Ninth Circuit law shows that someone who's in, outside of the country, isn't part of the bring to. I would like to say on the jury note, if I may, that in this case, the whole procedure that the judge set up violated Ms. Although, if attorneys aren't willing to hear the note over the phone, then we'd have to wait outside the courtroom during the whole deliberation process. And so there was an agreement that notes would be read over the phone, and that if there was an objection, that would be done in open court. But that never happened in this case. Instead, the judge just, without telling any of the attorneys about this other part of the note, and without giving me an ability to put an objection on the record, then told us about the note when there was a verdict. And the other problem with this procedure was- I think the procedure is just flat wrong. The question is, was it harmless in the context of the case? Right, and the government can't meet its burden of proving beyond a reasonable doubt this is a constitutional violation because she wasn't present in the courtroom. And I wasn't given the ability to be present because he never told us about the note. So it's a constitutional violation. They have to prove that it didn't affect the outcome beyond a reasonable doubt. The cases that are in this area all focus on the timing of the note. The judge did respond to the note that's in the supplemental excerpt of record of the government, excerpt of record 46. It's a two-part note. The first part is about- We're quite familiar with the note. Yeah, and then the second part that we didn't hear about. But we don't- the problem with the- the other problem with the procedure is nowhere in the record does it say when the note was given to the judge. Nowhere in the record does it say when the judge responded to the first part of the note. So that means the government can't possibly prove beyond a reasonable doubt that it didn't affect the outcome because it could have been five minutes before the verdict. It could have been the first day. The government speculates in a footnote in their brief that it was probably the second day, but they can't prove when it was, and therefore, they can't prove beyond a reasonable doubt it didn't affect the jury's verdict. Thank you. Good morning. My name is Rebecca Youngman, Assistant U.S. Attorney, and I represent the United States in this matter. I'd first like to point out what I'm sure the panel is well aware of, is that aiding and abetting is, of course, embedded in every federal indictment. And this Court has specifically held that in 1324 cases, the government does not need to elect between a theory of principal liability and aiding and abetting liability. I think the argument in this case is a clever one, but it's simply not- it's simply not applicable. There was evidence of both, and this Court has clearly held that the government is not required to choose one or the other. And just as the government is accused of charging aiding and abetting in order to get out from under Munoz, conversely, you know, the defense would like their clients to be charged as principals only so that they can come firmly within the confines of Munoz. So the motives are actually the same on both sides. But in this case, I think as I pointed out in our brief, you know, there was clearly evidence of a principal, and that was brought in by the defendant herself extensively through her direct testimony. And the case that counsel relies on actually in his reply brief for the first time is United States versus Yoshida. And that case, even though he relies on it, actually eviscerates his particular argument that bring to must encompass an actual physical transport to the border, which, of course, Ms. Wilson did, but of course, Felipe did not do. And that case clearly states that it's not the reading of that phrase, brings to, is not so limited. It encompasses. That says to Felipe being the principal. Exactly. Exactly so. So if you say that Felipe was the principal and we have a broad reading of what bring to means, what happens to the encouragement, inducement prong of the statute? Because wouldn't, isn't Felipe's conduct also encouraging or inducing? It could be. I mean, his conduct could be charged in a number of ways. I mean, I think it would probably fall under multiple parts of the 1324 statute. But, you know, what the, what the. It doesn't, if the aiding and abetting is, is there and that, I mean, that would be in every case. Wouldn't encouraging or inducing also be aiding and abetting in every case? And if that's the case, why would Congress have made it a separate offense? Well, I, I think as, as, as counsel pointed out, I mean, the 1324 cases, I think the main case that has examined, you know, whether or not, for example, the Castillo- Felix case, I think was an encouraging, inducing case. And in that case, which examined whether or not you could look at extraterritorial conduct, that was, as opposed to a bring-to case, that was an encouraging or inducing case. I'm not sure that there's a substantive difference when determining whether or not you can, whether you're limited to charging aiding and abetting in those kinds of cases only. Is that, is that the. Well, I'm just wondering whether that, your theory of the aiding and abetting reads out the rest of the statute, gives no effect to the rest of the statute. Well, but given that the government doesn't need to choose between either one, and I, I think the Ninth Circuit's been very clear on that, I, I, I think to read it any other way would limit cases that have held to the contrary, that have, that have held specifically, you know, there's no need to, there's no need to elect between the two theories. I think the thing, you know, the thing that kind of bothers me here is not that there's the government, I mean, the government can elect and it can charge both, but the special verdict form, it doesn't show, I mean, you didn't have a special verdict form, so you don't know what she was actually convicted of, yet the government is putting in. So, suppose. I see what you're saying. Because you give all the. Yes, I see what you're saying. Okay. Yes. So what's your response to that? Well, but the theory of liability is for the same, it's all for the same offense. I guess that's, that's what I'm having trouble getting, that's what I'm having trouble understanding. No, it's the same actions, right? Yeah. But when, if, if she was convicted of aiding and abetting, she wouldn't get the three-year mandatory minimum. Well, no. Because you'd be going on Felipe's financial gain. And if she's convicted of bringing, then there's the three-year minimum. But, but in this case, I mean, and I think especially in this case, it all, and I think, as I pointed out in the brief, her financial gain is Felipe's financial gain is her financial gain. I mean, they were so tight. I think their relationship in this case in particular, tied finance, she was tied to finance, to that, we could prove up that element because his, his financial gain would of course benefit her because he was her support. Whereas if there was, and I think that there was evidence of her personal financial gain, then of course there's the financial gain in that respect as well. I mean, I, this was, I think a case where financial gain was clear under either theory of liability, if that makes sense. It was, and again, this is all from the defendant's own testimony. So does the word bring then in your view encompass what would be really known as the preparatory activities prior to crossing the border? Well, and as, as, as you pointed out, Judge McKeown, it's with, with, with respect to bring too, it's, it's, it's the actions, it's the concerted, right? It's the concerted effort. It's the concerted action. And the Yoshida case, I think was very clear and it's stating that the, the, the, the, the very final, the very final literal act of it, of bringing that person to the port of entry is not required in order to charge someone with a bring too offense. And it's, and that's, that's specifically what that case held. So it's, I, I, it may seem counterintuitive that they didn't, for example, that Felipe didn't literally bring that alien to the port of entry, but it encompasses the spectrum of conduct. And in this case, obviously, you know, everyone's literally, you know, a link in the chain. I mean, everyone's bringing them further and further from Mexico to the United States. And also I did want to touch upon the extraterritorial conduct as well. Because I think the Castillo-Felix case is, is clear on that. And that the, whether or not those acts took place outside of the United States, immigration cases are unique in that respect, that it can reach conduct that, that occurs beyond the borders. And of course that is completely sensical. If that's a word, I only know that nonsensical is a word. But, you know, this is, you know, this is the unique context where that is allowed. And in this case, I think because there was so much evidence proving up each element of the offense under either theory of liability that was provided by the defendant herself, even though Judge Wardle, Judge Wardle, I do understand your concerns. I, I think in, I, I think in this case, those concerns are, are allayed given, given the strength of the, given the strength of the case. If there are any other questions. Well, how did the, how did, how does the government show beyond a reasonable doubt that there was no prejudice stemming from the constitutional error, failing to advise the, you, you as well as the defense of the note? Of the, of the, of the jury note. And his decision basically to answer one question and not answer the other. Well, and I, I, I would like to point out, and I wish I had pointed this out in my brief, a part of Berrigan-Devis where this court noted that because there was not a motion for a new trial in that case or in, in this case, you know, what this court was, was unfortunately faced with, faced with was an absence of, of an explanation. And what this court had specifically said in Berrigan-Devis was, you know, given the defendant's failure to timely move for a new trial, it was, it was simply unwilling to assume that there was an inadequate reason for the district court's decision not to respond. And I would like to note, you know, it's, when we're looking at a judge's response without first consulting the attorneys and without an ex parte response, so to speak, there's kind of a sliding scale of coerciveness. I mean, you know, most of the cases deal with a judge's response. Very few actually address a non-response. What do you do in the face of silence? Like, what do you read into that? What does that mean? The jury clearly did something improper by telling them the numbers. Absolutely. But what's important about the, which obviously, you know, first they said they're split, but they didn't say which way they were split, which I do want to note, but there was no message that the judge sent that would have, that, that encouraged unanimity. It wasn't even a, it wasn't even a message to continue to deliberate. It wasn't even, it was nothing close to an Allen charge. So then if we don't, if we say that's okay, the government's met its burden, there's no prejudice, that means that judges have no obligation ever to respond because. Oh, golly. No. Okay. No, no, no, not at all. Not at all. No, no, no, no. Um, and I, I think that they, maybe they wouldn't respond because if you respond, you could do the wrong thing and end up getting. Exactly. So exactly. Right. So exactly. So you want them to respond. Well, and it's, you know, you always want counsel to have the opportunity and I, and it, but you're right. It can actually backfire with a judge's response can be so detailed that it be, that does become coercive. It can, it can, it can go either way. But, um, but in this case, I mean, I think what's important is that the defense did note that, um, it, you know, it would have asked for mistrial. And I think that the judge did explain that, you know, they weren't even close to that point. Um, because of course the jury hadn't said that it was hopelessly deadlocked. We were nowhere near that. And it would have simply asked that the court repeat instructions that it had given. The court did do a very smart thing in this case and it gave kind of what I've deemed a prophylactic Allen charge. It told the jurors, he told the jurors at the beginning of the case, um, excuse me, at the beginning of his jury instructions, um, uh, not to surrender their, their honestly held beliefs in order to get to a verdict. Um, and that's precisely the instruction that, um, the defense would have asked for. And the judge was wise to do that at the beginning. Um, it's basically the counterbalance to the Allen charge and he, he, he gave it at the outset. So there's really nothing else that he could have, um, done that he hadn't already done. Um, and I, I think the Frazen case actually is, um, uh, uh, really sets out, um, exactly, um, the point because in that case, the defense had said, here's what we would have asked for, a mistrial or a repeat of the reasonable doubt instruction or repeat of the, do not surrender your conscious, your conscious, your conscientiously held beliefs instructions. Those are the three things the defense wanted or would have wanted had they have, had they had the opportunity to respond exactly the same things that, um, defense that the defense would have asked for in this case. And in Frazen, um, the court said, no, we consider these possibilities other, either unlikely to have occurred the declaration of a mistrial, um, or unlikely to have affected the jury verdict. It's precisely what we have here. Is that proof beyond a reasonable doubt? I'm sorry? Is that proof beyond a reasonable doubt? That is a standard. Exactly. Thank you. Thank you. Mr. Hermanson? I just have a couple points.  Um, and of course our theory was that she was a blind mule, an unknowing participant in this scheme. She, she conveyed them, led them, carried them. The only argument the government would have is cause to come along from one place to another. And there, their argument would be that Felipe caused her to come along and she aided and abetted Felipe knowing that Felipe intended financial gain. So there's so many inferences that would have to be met and it would, Felipe would have to be liable for the bring to extraterritorially in Mexico. And, but the, the natural and, and normal reading under in, and this is at page 14 of, uh, page 14 of the reply brief, um, convey, lead, carry, cause to come along from one place to another. The question there would be, is it approximate cause or is it the direct cause? And when in statutory interpretation and looking at what the word bring means, you look at all the natural definition and all the words around it, and it certainly wouldn't be approximate cause. It would be the direct cause of the principle in this case, which leads to whether or not, um, Felipe could have possibly been the person who caused to come along from one place to another in this court's opinion and, um, cited at page 16 of the reply brief, Yankeeshi Ito says that since there is no indication that Congress intended the alien smuggling statute to reach activities outside the territorial limits of the United States. So despite the government's argument that it should, Congress hasn't said that it does. This court concluded that the individuals who had transported the aliens from Mexico to a location on the high seas had not committed any crime within the jurisdiction of the United States. Thus, as there was no evidence that a substantive offense was committed by any principle. So under the government's theory, Felipe is the principle. His actions in Mexico, um, she aided and abetted, uh, clearly could not, she could not have been aiding and abetting Felipe. So this court concluded that the defendant had not, could not be held liable as an aider and abetter for attempting to bring aliens and reverse the convictions on those counts. As far as, um, Barragán-Devis on the jury note issue, uh, the government relies heavily on that case. That case says that it's a constitutional error and that case is clearly distinguishable from this case because there, um, there was no motion for a mistrial. There was no objection. So it's the Barragán-Devis case is closer to, although they don't do plain error analysis, they say had appellant timely made a motion for a new trial, the district judge would have had the opportunity to explain his decision to ignore the note. Here, I wasn't told about the note until, uh, the verdict was in. So before the verdict was read, I had two seconds to respond to the note and said, I would have asked for a mistrial. So that was the very first time I could, uh, object. And the judge's response is cryptic. Uh, his response sounds more like it's responding to the, the other part of the note, because it wasn't until then that the judge allowed me to put on the record that, um, when he replied to the jury's question about, uh, the names of the material witnesses, I didn't, I wanted them to, to know that, I mean, his note to them said all you have to, all, all she had to know was that someone was in there and I wanted him to tell the jury, well, it's not just someone, but that that person has to be an alien. And so I, I put on the record the other things that I wanted the judge to tell the jury. Um, but that was the first time that I was allowed to respond to that note. So, and the phrasing, the phrasing case is, is clearly distinguishable from this case, um, and doesn't control here. Instead, the case that controls, and this is my last point, the case that controls on the jury issue, um, is the Hurd case. Um, actually that's, um, well under phrasing, actually the, the, it's the same constitutional harmless error. And this goes back to Judge Wardlaw's point that, um, you look at the effect of the note and the timing and here we just don't know. Um, and in that case, the note wasn't coercive. And so there, there was a note. So that case is distinguishable because here the, the judge just completely ignored the note and we have no idea when the note was, um, given. So with that, I would submit it unless the court has further questions. No, thank you very much. Thank both counsel for your arguments this morning. The cases argued United States versus Wilson is submitted.
judges: Hall, McKeown, Wardlaw.